UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SALAHUDDIN IGWE formerly known as MICHAEL A. WILLIAMS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 15-7418 |
| v. | : | |
| DETECTIVE TAWAND SMITH, CAMDEN COUNTY, DETECTIVE SHAYQUIRA WILLIAMS, OFFICER MICHAEL PANTALON, and SERGEANT BRANDON KERSEY, | : : : | OPINION |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. 32]. The Court heard oral argument on the motion on March 13, 2018 and the record of that proceeding is incorporated here. For the reasons expressed on the record that day, as well as those set forth below, the motion will be granted.

Background

On November the 19, 2014 at approximately 11:17 p.m. Officer G. Lewis of the Camden County Police Department was in the City of Camden patrolling when a woman approached the officer and advised him she had just been subject to rape. He immediately called for ambulance and she was taken to the hospital.

1

Shortly thereafter, officers from the Camden County Police Department ("CCPD") went to the hospital and obtained a preliminary identification from the victim for her alleged attacker. CCPD Detectives Shyquira Williams and Tawand Smith responded and took a recorded statement from the victim. She indicated that the individual had met her at the AM/PM mini market at the corner of Mt. Ephraim and Kaighn Avenues and they then proceeded to 1327 Lansdowne Avenue to smoke crack. Instead, once they entered the abandoned building where the man claimed to live, he brutally raped her for 27 minutes while wielding a broom as a weapon. The woman remembered it was 37 minutes because she counted to 60, 37 times during the ordeal. She described this individual as a tall black male, thin, dressed all in black, bearded, and wearing a black hat. She also indicated that he had crooked teeth, appeared dirty, and spoke "ghetto."

At or about the same time, that information was communicated to officers in the area where the victim had reported the crime. Sergeant Brandon Kersey of the CCPD saw one individual matching the description he had received of a black male wearing all black with a black baseball cap; that individual was the Plaintiff. He was walking up Lansdowne Avenue from the direction where the crime had been committed and proceeded directly in front of Kersey to go into the AM/PM mini market.

Kersey stopped Plaintiff and Officer Pantaleon detained him in his patrol vehicle. Plaintiff was taken to the police station for questioning. Upon arriving at the station, Plaintiff exercised his Fifth Amendment right and refused to give a statement. Plaintiff was then photographed. Smith ordered a photo array from the sheriff's department to be presented to the victim.

CCPD Officer Lucas Murray, who was not involved in the investigation and was unaware which one of the eight photographs he was carrying depicted the suspect, presented the photo array to the victim in the hospital. Murray noted that the victim looked through the photographs one at a time. She saw the first photograph and said she thought that was her attacker. Murray then asked the victim to continue to look through the rest of the photographs, and when she got to number 8, which was the Plaintiff, she changed her mind and identified Plaintiff as her attacker. She then compared the two photographs, 1 and 8, said, "I don't think it's number 1, I think it's number 8." The officer then asked her to give him a percentage of which she was comfortable with the identification; in other words, what percent she was committed that this was the individual who raped her about an hour prior. She identified Plaintiff as her attacker with a 75% degree of certainty.

Murray then communicated that information to Detective Smith. No charges had been officially filed at that point, but Plaintiff was being held for questioning. Detective Smith consulted with the Camden County Prosecutor's Office assistant prosecutor who was on duty that night and informed him of the situation. She gave him the description, where Plaintiff was apprehended, and the other information that had been given by the victim and then the details of the photo array. The assistant prosecutor advised Smith that there was probable cause to arrest Plaintiff and instructed her to charge Plaintiff with aggravated sexual assault and possession of a weapon for an unlawful purpose. Detective Smith filed those two charges against the Plaintiff in accordance with the Prosecutor's Office recommendation and instruction.

Unable to post bail, Plaintiff was transported to the Camden County Correctional Facility on November 20, 2014 and remained there until his March 7, 2015 release from custody because his charges were dismissed. It was subsequently determined that the victim did not wish to cooperate with maintaining the investigation. Plaintiff has filed claims of unreasonable search and seizure and malicious prosecution. Through briefing on the instant summary judgment motion, he has conceded his claims against

Defendant Camden County, and proceeds only against the individual Defendants.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material

fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Discussion

Plaintiff's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable

>to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.) Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

The Fourth Amendment prohibits seizures in the absence of probable cause. Orsatti v. New Jersey State Police, 71 F.3d. 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a

reasonable person to believe that an offense has been or is being committed by the person to be arrested." Id. That is, probable cause to arrest exists when facts and circumstances within a police officer's knowledge would convince a reasonable person that an individual has committed an offense. See Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Myers, 308 F.3d 251, 255 (3d Cir. 2002). The inquiry is not whether the individual actually committed the crime for which he was arrested, but whether the officer had probable cause to believe so at the time of the arrest. See Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005).

To establish malicious prosecution under § 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding; (3) the criminal prosecution resulted in plaintiff's favor; (4) the proceeding was initiated without probable cause; and (5) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. Halsey v. Pfeiffer, 750 F.3d 273, 296-97 (3d Cir. 2014); DiBella v. Borough of Beachwood, 407 F.3d 599, 601 (3d Cir. 2005); Santiago v. City of Vineland, 107 F. Supp. 2d 512, 566 (D.N.J. 2000).

In this case, the Court finds that the individual Defendants had probable cause to detain and arrest the Plaintiff, and at the very least are shielded by qualified immunity. Considering the facts leading up to the initial stop and the circumstances that resulted in charging Plaintiff, none of the individual Defendants can be said to have violated Plaintiff's civil rights. Notably, the Third Circuit has indicated that "a victim's identification, even without any other evidence, will 'usually be sufficient to establish probable cause.'" Cooper v. City of Phila., 636 F. App'x 588 (3d Cir. 2016) (where the plaintiff spent 77 days in jail for a crime he did not commit based on a faulty identification by a robbery victim) (quoting Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000)). Further, "[t]he Fourth Amendment does not require that an identification be perfect in all respects." Cooper, 636 F. App'x at 590 (referring to Wilson where probable cause had been established despite that the plaintiff was four to seven inches shorter than the victim had described, among other factors).

## Conclusion

In the language of the Circuit, "[a]lthough we share [Plaintiff's frustration with the way events unfolded, [the officers] had probable cause to arrest him." Cooper, 636 F. App'x at 589.

Therefore, Defendants' motion for summary judgment will be granted. An appropriate Order will be issued.

Dated: March 26, 2018              /s/ Joseph H. Rodriguez
                                              JOSEPH H. RODRIGUEZ
                                                    U.S.D.J.